## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MALANO SHEPARD,** | ) | |
| c/o Cornerstone Law Firm | ) | |
| 5821 NW 72nd Street | ) | |
| Kansas City, MO 64151 | ) | Case No._____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| | ) | |
| **XPO LOGISTICS FREIGHT, INC.** | ) | |
| *Serve Registered Agent*: | ) | |
| 2101 SW 21st Street | ) | |
| Topeka, KS 66604 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Malano Shepard. by and through his attorneys, and for his cause of action against Defendant XPO Logistics Freight, Inc., alleges and states as follows:

### Parties and Jurisdiction

1. This is an employment case based upon Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.

2. **Plaintiff Malano Shepard** ("Plaintiff") is an African American citizen of the United States, residing in Belton, Cass County, Missouri.

3. **Defendant XPO Logistics Freight, Inc.** ("Defendant") is and was at all relevant times a for-profit corporation organized under the laws of Delaware.

4. At all relevant times, Defendant was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

5. Defendant conducts substantial and continuous business and has substantial and numerous contacts with the State of Kansas and Wyandotte County.

6. At all relevant times, Defendant operated and maintained a place of business at 234 E Donovan Road, Kansas City, Wyandotte County, Kansas 66115.

7. At all relevant, Defendant had more than fifteen (15) employees.

8. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII")*,* and 42 U.S.C. § 1981 ("§1981").

9. Plaintiff is an "employee" within the meaning of Title VII and § 1981.

10. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 because some or all of Plaintiff's claims arise under the laws of the United States.

11. Venue is proper in the District of Kansas pursuant 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged discriminatory conduct described herein, including but not limited to Plaintiff's wrongful termination, occurred in this District.

## **<u>Administrative Procedures</u>**

12. On or about November 25, 2019, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation against Defendant (attached as *Exhibit 1* and incorporated herein by reference).

13. On or about June 5, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as *Exhibit 2* and incorporated herein by reference).

14. This lawsuit is filed within 90 days of the EEOC's issuance of Plaintiff's Notice of Right to Sue.

15. The aforesaid charge of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC

investigation, which could reasonably be expected to have grown out of the charges of discrimination.

16. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

17. This Complaint is filed within the requisite statute of limitations.

## General Allegations Common to All Counts

18. In approximately January 2016, Plaintiff began his employment with Defendant as a Forklift Driver.

19. Approximately three (3) months later, in April of 2016, Plaintiff was transferred to work as a Diesel Mechanic Apprentice.

20. The job duties of the Diesel Mechanic Apprentice involved performing maintenance and repairs on the diesel trucks.

21. However, for approximately the first six (6) months of Plaintiff was in this new role, Shop Supervisor Dan [LNU] ("Supervisor Dan") (white) only trained and allowed Plaintiff to work on forklifts, which was not part of his job duties as a Diesel Mechanic Apprentice.

22. On information and belief, Defendant engaged in a pattern and practice of providing African American employees less training for their positions than their white counterparts.

23. Throughout Plaintiff's employment as a Diesel Mechanic Apprentice, he experienced ongoing racially discriminatory treatment and harassment from his white co-workers in the department.

24. The white employees in the department excluded Plaintiff and made him feel like he was not worthy of being there.

25. For example, Plaintiff's white co-workers would not greet him when he entered the shop, and they refused to allow him to borrow their tools if he asked.

26. However, the white employees greeted one another and shared tools with each other on a regular basis.

27. Plaintiff also personally witnessed the use of racial slurs and racially offensive conduct at work on almost a daily basis.

28. Some examples of racially offensive comments and conduct from Plaintiff's white co-workers include, but are not limited to, the following:

    a. Displaying confederate flags on employee toolboxes and helmets;

    b. Telling Plaintiff he could not play his music (which featured black artists) because they did not want to listen to that "monkey shit;"

    c. Displaying ropes tied into nooses on the walkway to the shop from the parking lot;

    d. Throwing away Plaintiff's lunches; and

    e. Piling dirt and shovels in front of Plaintiff's toolbox.

29. In approximately December 2016, Plaintiff reported to Human Resources that he did not feel safe working for Defendant.

30. Specifically, Plaintiff reported to HR the following racially discriminatory conduct by white employees: (1) displaying confederate flags on their toolboxes and helmets; (2) telling Plaintiff he could not play music because they did not want to listen to that "monkey shit"; (3) hanging nooses on the walkway to the shop from the parking lot; (4) throwing away Plaintiff's lunches; and (5) putting dirt and shovels in front of Plaintiff's toolboxes.

31. After Plaintiff made his complaint of race discrimination and harassment to H.R., the racially discriminatory treatment and harassment toward Plaintiff continued, and even worsened.

32. For example, the same rope that was fashioned into a noose was laid under Plaintiff's toolbox.

33. Although the confederate flags were taken off employee toolboxes, they were still displayed on employee helmets.

34. Plaintiff's white coworkers continued to throw away his lunches, and they continued to turn off any music Plaintiff played, which predominately featured black artists.

35. Lead Mechanic Wesley Herman ("Lead Mechanic Herman") (white) was the only person who would provide Plaintiff with job training.

36. Because of this, Mechanic Steven Hicks ("Mechanic Hicks") (white) called Lead Mechanic Herman a "nigger lover."

37. In approximately August of 2017, due to the ongoing racial discrimination and harassment, Plaintiff tried to transfer his position to Defendant's California location.

38. Unfortunately, Plaintiff was unable to transfer due to his daughter being born prematurely.

39. Still, the racial discrimination and harassment at Plaintiff's job location continued.

40. When tools went missing in the shop, Plaintiff's white co-workers accused him of stealing and called him a "thief."

41. On information and belief, Plaintiff's co-workers accused him of stealing and being a "thief" based on offensive racial stereotypes of African Americans committing crimes.

42. In approximately 2018, Mechanic TJ [Last Name Unknown] ("Mechanic TJ") (white) called Secretary LaTonya Jackson ("Secretary Jackson"), who is black, a "nigger bitch."

43. Mechanic Dennis Graves ("Mechanic Graves") (white) reported the comment to Human Resources, and shortly thereafter, Mechanic TJ was terminated.

44. Because of Plaintiff's race, his coworkers assumed he was the one who reported the racial slur, and therefore, blamed Plaintiff for Mechanic TJ's termination.

45. After this incident, the racial hostility toward Plaintiff and other African American employees worsened.

46. Mechanic Richard Howe ("Mechanic Howe") (white) told Plaintiff that Mechanic TJ was going to come to work and "beat [Plaintiff's ass."

47. Around this same time, Plaintiff noticed someone keyed his car and tried to scrape the word "nigger" onto his car.

48. Plaintiff reported to Supervisor Kevin Calhoun ("Supervisor Calhoun") (white) that someone keyed his car and tried to scrape "nigger" onto it.

49. To Plaintiff's knowledge, Supervisor Calhoun did not investigate Plaintiff's report of racial harassment or pass the complaint onto Human Resources.

50. Plaintiff worked with Apprentice Mechanic, Warrin Clark ("Mechanic Clark") (black), who also experienced racial harassment and discrimination in the workplace.

51. In approximately August 2018, Plaintiff heard Mechanic John Turner ("Mechanic Turner") (white), Mechanic Jim Thompson ("Mechanic Thompson") (white), and Mechanic Hicks (white) say that Mechanic Clark was slow because of his skin color, the only reason he was hired was because of his skin color, and the whole shop was "turning black."

52. As an African American, these comments about Mechanic Clark also offended Plaintiff.

53. In approximately late 2018, Plaintiff heard Team Lead Isaac McCorkle ("Team Lead McCorkle") (white) say that he was looking for a house to buy and he did not want to be I a location around a whole bunch of "coloreds."

54. Plaintiff reported Team Lead McCorkle's racially offensive comment to Supervisor Calhoun.

55. Again, to Plaintiff's knowledge, Supervisor Calhoun did not discipline Team Lead McCorkle, investigate Plaintiff's report of racial harassment, or pass the complaint onto Human Resources.

56. In approximately late December 2018 or early January 2019, Plaintiff worked on the third (3rd) shift with Team Lead McCorkle and Mechanic Clark.

57. During the shift, Team Lead McCorkle announced he was quitting and told other employees, "I don't want to work with niggers."

58. Shortly thereafter, in late December 2018 or early January 2019, Plaintiff reported to Human Resources that other employees were treating him and Mechanic Clark differently because they are black.

59. Specifically, Plaintiff reported that he and Mechanic Clark were not being trained properly, they were the only employees not allowed to work overtime, they were not getting approved for time off, and white employees were purposefully watching them at work in an attempt to catch Plaintiff and Mechanic Clark doing something wrong.

60. Notably, Defendant engaged in a pattern and practice of regularly approving white employees' requests to work overtime hours or for time off, but not permitting black employees, including Plaintiff and Mechanic Clark, to work overtime hours or approve their requests for time off.

61. Plaintiff also reported these same issues about black employees being treated less favorably than white employees to Supervisor Calhoun.

62. Additionally, when Lead Mechanic Herman asked Supervisor Calhoun about overtime, Supervisor Calhoun stated that only third (3rd) shift was not allowed to work overtime.

63. Notably, at that time, the only employees on third (3rd) shift were two (2) black employees, including Plaintiff.

64. On or about January 17, 2019, Plaintiff reported to work but forgot his badge to clock in.

65. Instead, Plaintiff took a photo of the timeclock when he arrived and sent the photo to his supervisor.

66. Plaintiff had done this in the past when he forgot his badge, with no issue.

67. However, on or about January 18, 2019, Plaintiff was asked to write a statement about allegedly failing to clock in on or about January 17, 2019.

68. Plaintiff worked the next two weeks like usual.

69. However, approximately two weeks later, in early February 2019, Defendant terminated Plaintiff's employment for allegedly reporting to work but not clocking in on January 17, 2019.

70. On information and belief, Defendant's proffered reason for Plaintiff's termination is pretextual, and the true reason is because of Plaintiff's race (African American) and in retaliation for Plaintiff's reports of racial discrimination and harassment in the workplace.

## COUNT I
### Violation of 42 U.S.C. §§ 2000e *et seq.*
#### RACE DISCRIMINATION – TERMINATION

71. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

72. Plaintiff is a member of a protected class because he is African American.

73. Defendant took adverse employment actions against the Plaintiff by failing to train the Plaintiff, and/or interfering with Plaintiff's ability to perform his job duties, and/or assigning Plaintiff less desirable job duties, and/or refusing to allow Plaintiff to work overtime, and/or ultimately terminating Plaintiff's employment.

74. Plaintiff's race was at least a motivating factor in Defendant's discrimination against Plaintiff throughout his employment, and his termination.

75. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

76. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

77. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

78. As shown by the foregoing, as a result of his race, Plaintiff suffered intentional discrimination at the hands of Defendant in violation of Title VII.

79. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

80. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

81. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

82. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation of Title VII 42 U.S.C. §§ 2000e *et seq.*
#### RETALIATION

83. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

84. Plaintiff engaged in a protected activity under Title VII by making multiple reports of what he believed in good faith to be race discrimination and/or racial harassment to the Defendant.

85. By making multiple good faith reports of race discrimination and/or racial harassment in the workplace, Plaintiff engaged in protected activities during his employment.

86. Plaintiff suffered adverse employment actions as a result of his good faith reports, including the following: denying Plaintiff job training opportunities; assigning Plaintiff

less favorable job duties; refusing to allow Plaintiff to work overtime hours; interfering with ability to perform his job duties;  and ultimately, terminating Plaintiff's employment.

87. A causal connection existed between Plaintiff's good faith reports of race discrimination and GM's decision to terminate Plaintiff's employment.

88. Plaintiff's good faith reports of race discrimination were at least a motivating factor in the adverse employment actions taken against him, including but not limited to Defendant's termination of Plaintiff.

89. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

90. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

91. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

92. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in protected activities, in violation of Title VII.

93. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

94. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

95. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination and retaliation against Plaintiff.

96. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

97. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in Title VII.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation of 42 U.S.C. §1981
### RACE DISCRIMINATION – TERMINATION

98. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

99. Plaintiff is a member of a protected class because he is African American.

100. Defendant took adverse employment actions against the Plaintiff by failing to train the Plaintiff, and/or interfering with Plaintiff's ability to perform his job duties, and/or assigning Plaintiff less desirable job duties, and/or refusing to allow Plaintiff to work overtime, and/or ultimately terminating Plaintiff's employment.

101. Plaintiff's race was at least a motivating or determining factor in Defendant's decision to take adverse employment actions against the Plaintiff.

102. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

103. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

104. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

105. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of the Defendant, based on his race, in violation of §1981.

106. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

107. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

108. By failing to take prompt and effective remedial action, GM, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

109. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in §1981.

110. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and

showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Violation of 42 U.S.C. §1981
#### RETALIATION

111. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

112. Plaintiff engaged in a protected activity under § 1981 by making multiple reports of what he believed in good faith to be race discrimination and/or racial harassment to the Defendant.

113. By making multiple good faith reports of race discrimination and/or racial harassment in the workplace, Plaintiff engaged in protected activities during his employment.

114. Plaintiff suffered adverse employment actions as a result of his good faith reports, including the following: denying Plaintiff job training opportunities; assigning Plaintiff less favorable job duties; refusing to allow Plaintiff to work overtime hours; interfering with ability to perform his job duties; and ultimately, terminating Plaintiff's employment.

115. Plaintiff's reports about race discrimination and/or racial harassment were at least a

motivating factor in the Defendant's decision to terminate Plaintiff.

116. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

117. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

118. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

119. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in a protected activity, in violation of §1981.

120. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

121. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

122. By failing to take prompt and effective remedial action, GM, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

123. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in §1981.

124. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including

the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### RACE DISCRIMINATION – HOSTILE WORK ENVIRONMENT

125. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

126. Plaintiff is a member of a protected class because he is African American.

127. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of African American employees, including Plaintiff, based on their race.

128. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

129. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

130. Defendant subjected Plaintiff to severe and pervasive race discrimination, including but not limited to: making offensive, derogatory comments and slurs regarding Plaintiff's race; damaging Plaintiff's vehicle and attempting to carve the word "nigger" onto it; and displaying racially offensive symbols in the workplace, including confederate flags and a rope tied into a noose.

131. Additionally, Defendant treated Plaintiff, and other African American employees, less favorably than their Caucasian co-workers, including the following conduct: refusing to approve time-off requests for African American employees; refusing to provide adequate job training to African American employees; refusing to allow African American employees to work overtime hours; and refusing to take seriously Plaintiff and other employees' reports of ongoing racial discrimination and harassment in the workplace.

132. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment, and thereby detrimentally affected Plaintiff.

133. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

134. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

135. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

136. Plaintiff's status as an African American was at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiff.

137. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

138. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

139. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

140. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

141. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

142. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

143. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages,

reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VI**
**Violation under 42 U.S.C. §1981**
**RACE DISCRIMINATION – HOSTILE WORK ENVIRONMENT**

144. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

145. Plaintiff is a member of a protected class because he is African American.

146. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of African American employees, including Plaintiff, based on their race.

147. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

148. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

149. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of African American employees, including Plaintiff, based on their race.

150. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the

scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

151. Defendant subjected Plaintiff to severe and/or pervasive race discrimination, including but not limited to: making offensive, derogatory comments and slurs regarding Plaintiff's race; damaging Plaintiff's vehicle and attempting to carve the word "nigger" onto it; and displaying racially offensive symbols in the workplace, including confederate flags and a rope tied into a noose.

152. Additionally, Defendant treated Plaintiff, and other African American employees, less favorably than their Caucasian co-workers, including the following conduct: refusing to approve time-off requests for African American employees; refusing to provide adequate job training to African American employees; refusing to allow African American employees to work overtime hours; and refusing to take seriously Plaintiff and other employees' reports of ongoing racial discrimination and harassment in the workplace.

153. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment, and thereby detrimentally affected Plaintiff.

154. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

155. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

156. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

157. Plaintiff's status as an African American was at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiff.

158. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

159. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

160. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

161. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

162. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

163. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

164. Pursuant to the provisions of §1981, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### <u>Demand for Jury Trial and Designation of Place of Trial</u>

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

*Respectfully Submitted,*

CORNERSTONE LAW FIRM

By: _____/s/ Jessica M. McDowell
Ryan M. Paulus          D Kan 78276
r.paulus@cornerstonefirm.com
Brittany C. Mehl          D Kan 78534
b.mehl@cornerstonefirm.com
Jessica M. McDowell  D Kan 78731
j.mcdowell@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone                  (816) 581-4040
Facsimile                   (816) 741-8889

ATTORNEYS FOR PLAINTIFF